GARDEN, JUDGE:
On October 6,1973, the claimant was riding her ten-speed bicycle on West Virginia Secondary Route 3/5 in Mingo County near Cabwaylingo State Park. She was accompanied by a young man, Mike Lucas, who was preceding her on his own bicycle. Apparently Route 3/5 in this general area was constructed on a former railroad right of way. The road also crosses about three converted railroad bridges, and it was while the claimant was crossing one of these bridges that the accident occurred.
The subject bridge is rather narrow, not being wide enough to accomodate more than one lane of traffic. Apparently the deck of the bridge was constructed by laying planks across the rails, perpendicular to the flow of traffic. On top of these planks, boards were secured which ran the length of the bridge and more or less formed two fairly wide tracks for the use of vehicular traffic. The sides of the bridge were constructed of steel siding, but there was an opening along each side of the bridge between the wooden deck and the steel siding. This opening was about two feet wide and, as indicated, ran along the side of the bridge deck and steel siding the entire length of the bridge and on each side thereof. Claimant testified that she lost control of her bicycle when it struck a crack in one of the boards that made up one of the tracks which ran the length of the bridge. As a result of losing control of her bicycle, the claimant fell through the ópening to her right and between the bridge deck and the steel siding. She fell a distance of 30 feet on rocks with her bicycle landing on top of her.
As a result the claimant suffered serious personal injuries. She was taken to the Logan Medical Foundation where a closed reduction of her fractured right wrist was performed and a laceration on her head was reduced. She was then transferred to the Huntington Hospital where it was determined that she had also *258 sustained a compression fracture in her lumbar vertebra. She was fitted with a Taylor back brace and was discharged from the hospital on October 19,1973. She was unable to return to work as a registered nurse until May of 1974. At that time she discovered that due to the continuing pain and weakness in her low back that she couldn’t lift heavy patients, and as a result she was forced to resign as a nurse at the Huntington Hospital. She then started private duty nursing, accepting only those cases that did not involve the lifting of heavy patients.
Some twelve to thirteen months after the accident, the claimant noticed that her vision was blurred, and again she sought medical advice and was informed that she had developed cataracts on both of her eyes. Subsequently she was confined in a Morgantown hospital for one week in February of 1976 during which period the cataract on her right eye was surgically removed by Dr. Ralph Ryan. In September of 1976 she had the cataract on her left eye removed by Dr. M. C. Korstanje of Huntington. Dr. Korstanje was of the opinion to a reasonable degree of medical certainty that the cataracts were either aggravated or were the direct result of the traumatic injury sustained on October 6, 1973. On the other hand, Dr. Donald G. Hassig of Charleston, who examined the claimant on behalf of the respondent, was of the opinion that it was highly improbable that the head trauma could have been the antecedent cause of the cataracts.
Be that as it may, there is an abundance of evidence that the claimant sustained serious, painful and permanent injuries as a result of this accident. Her out-of-pocket expenses for hospital bills, doctor bills and other necessary expenses, when coupled with her claim for lost wages, results in a claim for special damages in excess of $16,000.00. The evidence of damages sustained by the claimant is clear and convincing, but our problem in this claim is in respect to the issue of liability. The only testimony adduced at the hearing in respect to liability was the testimony of the claimant that there was a crack in the board, and that her bike wheel got caught in the crack. Photographs of the bridge and the crack in the board were introduced into evidence, and while a small crack does seem to appear in one of the boards, it certainly is at best, minor in nature and size. This bridge was constructed and maintained by respondent primarily to accomodate automobiles, and we do not feel that the law requires respondent to be an insurer of the safety of pedestrians or bicyclists using the bridge. No evidence was presented indicating that respondent was aware of the crack in the *259 board, and we do not feel the evidence justifies a finding on our part that respondent should have been aware of the existence of the crack.
While we are most sympathetic toward the claimant, we do not believe that the claimant has established by a preponderance of the evidence that the respondent was guilty of any negligence which was the proximate cause of the accident and resultant serious injuries of the claimant.
Claim disallowed.
Judge Daniel A. Ruley, Jr. did not participate in this decision.